**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **GORDON VAUGHN, 0116069,** : | |
| Plaintiff, : | |
| vs. : | **CIVIL ACTION 12-0769-KD-N** |
| **STATE OF ALABAMA, et al.,** : | |
| Defendants. : | |

**REPORT AND RECOMMENDATION**

This § 1983 action, filed by a Mobile County Metro Jail inmate proceeding pro se, was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4) for appropriate action. Along with the complaint, plaintiff filed a motion to proceed without prepayment of fees. (Doc. 2). In order to proceed in forma pauperis in this action without having to pay the $350 filing fee at the time of filing, plaintiff cannot be subject to the provisions of 28 U.S.C. § 1915(g). The Court has discovered, however, that plaintiff's action is subject to § 1915(g). After consideration of plaintiff's complaint as supplemented, it is recommended that this action be dismissed without prejudice under 28 U.S.C. § 1915(g) for the reasons noted below.

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [28 U.S.C. § 1915] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

After reviewing the records of the United States District Courts for the Southern, Middle, and Northern Districts of Alabama, the Court discovered that while plaintiff was prisoner, he had at least three actions that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief can be granted, namely, Vaughn v. Thigpen, CA 92-0833-ID-CSC (M.D. Ala. Sept. 21, 1992); Vaughn v. Hunt, CA 92-0874-ID-CSC (M.D. Ala. Sept. 8, 1992), appeal dismissed without legal merit (11th Cir. Feb. 16, 1993); Vaughn v. Harrelson, CA 92-0955-ID-CSC (M.D. Ala. Sept. 21, 1992); Vaughn v. DeMent, CA 92-1259-WHA-VPM (M.D. Ala. Dec. 22, 1992); Vaughn v. Folsom, CA 94-0941-WHA-CSC (M.D. Ala. Nov. 9, 1994); Vaughn v. U.S. Postal Service, CA 94-1186-WHA-CSC (M.D. Ala. Oct. 7, 1994); Vaughn v. Harrelson, CA 94-1338 (M.D. Ala. Mar. 3, 1995); Vaughn v. Wallace, CA 94-1556-WHA-CSC (M.D. Ala. Dec. 21, 1994); Vaughn v. Herring, CA 95-0147-ID-CSC (M.D. Ala. Nov. 9, 1995); Vaughn v. Wallace, CA 95-0184-MHT-CSC (M.D. Ala. Nov. 9, 1995); Vaughn v. Jones, CA 93-0653-BH-C (S.D. Ala. Mar. 3, 1994); Vaughan v. United States of America, CA 90-2655-RBP-RRA (N.D. Ala. Feb. 22, 1991); Vaughan v. White, CA 89-5318-JHH-ETC (N.D. Ala.), appeal dismissed as frivolous (11th Cir. Apr. 2, 1990); and Vaughan v. Jones, CA 93-0711-AH-C (S.D. Ala. Mar. 3, 1994).[1]  Thus, the present action comes within the scope of 28 U.S.C. § 1915(g).

In order to avoid the dismissal of the present action under § 1915(g), plaintiff must satisfy the exception to § 1915(g), which requires that he show that he was "under imminent danger of serious physical injury" at the time of the complaint's filing.  See Adbul-Akabar v. McKelvie, 239 F.3d 307, 315 (3d Cir. 2001) ("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those

---

[1] In addition to these actions that plaintiff filed under the last name of Vaughn or Vaughan while he was incarcerated, he filed two actions while he was not incarcerated, Vaughn v. United States Government, CA 10-0266-RS-GRT (N.D. Fla. Jan. 6, 2011), and Vaughn v. Hines, CA 11-0002-RS-CJK (N.D. Fla. June 8, 2011).  Both actions were dismissed on one of § 1915(e)(2)(B)'s grounds.

harms that had already occurred."), cert. denied, 533 U.S. 953 (2001); Brown v. Johnson, 387 F.3d 1344, 1349 (11th Cir. 2004) ("a prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)"); Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (the imminent danger of serious physical injury faced must be at the time the complaint is filed, not at a prior time).

In assessing if a plaintiff is under imminent danger of serious physical injury, "the issue is whether his complaint, as a whole, alleges imminent danger of serious physical injury." Brown, 387 F.3d 1344, 1350 (11th Cir. 2004). A plaintiff "must allege and provide specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury, and vague allegations of harm and unspecific references to injury are insufficient." Ball v. Allen, CA No. 06-0496-CG-M, 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007) (unpublished) (citations and quotation marks omitted) (Granade, C.J.). Furthermore, the allegations must demonstrate that at the time the complaint was filed the danger existed. Id. at *2.

In reviewing the complaint's and its supplement's allegations (docs. 1, 4), the Court does not discern a claim showing that plaintiff was "under imminent danger of serious physical injury" at the time he filed the complaint on or about December 26, 2012. See Doc. 2 at 13 ("sent out 12-26-12"); see also Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988) (a prisoner's pleading is deemed filed when the prisoner "deliver[s] it to the prison authorities for forwarding to the court clerk"); Vanderberg v. Donaldson, 259 F.3d 1321, 1325 n.4 (11th Cir.) (applying Houston v. Lack to a variety of actions), cert. denied, 535 U.S. 976 (2002). In the complaint, plaintiff's handwriting occupies every available space on the Court's complaint form, including the back of its pages. Filling every space with handwriting

has made the complaint extremely difficult to read and to determine what the claims are, particularly when plaintiff responds to the form's questions in the midst of his surrounding allegations. Moreover, plaintiff repeats himself throughout the complaint and complains of incidents occurring years ago.

Whereas, the Court's review under § 1915(g) is focused on claims that arose or were occurring at the time of the complaint's filing. Thus, the Court is focusing on those allegations related to plaintiff's present incarceration. Plaintiff relates that he arrived in Mobile on September 6, 2012. (Doc. 1 at 4). Subsequently, he was advised at the State Troopers' Office to go to West Infirmary to have his swollen right foot examined. (Id.). His foot has been swollen since the 1990's when inmates at St. Clair Prison twisted his foot completely back around. (Id. at 5). Plaintiff lived in the woods near the hospital for a while, and he thinks that he left his food stamp card at the troopers' office. (Id. at 4). At some point, plaintiff stole a pack of salami at the Save-A-Lot food store at Broad and Government Streets because churches had denied him food. (Id.). And on September 27, 2012, he was arrested for theft of property, third degree, while he was leaving the Social Security Office. (Id. at 4, 5).

While at the jail he has had one hearing on November 2, 2012 in his criminal case. (Id. at 4). And his trial was set for January 25, 2013. (Id. at 7, 9). Also at the jail two attempts have been made on his life, one on October 10, 2012, for which he had to go USA for seven stitches in his head (id. at 5, 7), and the other on November 15, 2012, after which the jail's clinic closed a one and half inch cut on his head with two staples instead of sending him to the hospital. (Id. at 10). In addition, plaintiff is receiving medical care for his mental condition, (id. at 9, 21) and medical care for his foot. (Id. at 19). Specifically, plaintiff states that on November 30, 2012, his foot was swollen as big as a balloon, but he was only given water pills at the clinic. (Id. at

19).  He complains that no blood test was done to determine if there was an infection so "they still may wind up cutting [the] foot off [] unless we get (unintelligible)."  (Id.).  He also states that "I've got a swollen foot now, it[] may have gain green [sic] in it now, if I don't."  (Id. at 7).

Plaintiff states that he is "on so called mental health ward (illegible) I'm 'crazy' to extent of being so called delusional[.]"  (Id. at 16).  Plaintiff indicates that he receives forced injections (id. at 8, 10), and "poison" and pills (id. at 15, 21), and that when he was released from prison in 1997, he was transferred to a mental hospital.[2]  (Id. at 8).  Some of plaintiff's allegations evince mental health issues, such as he heard that "President O'Bama . . .had a pla[que] of [plaintiff] in Wash D.C. about [plaintiff] being [the] unknown soldier. . . . [Plaintiff] has[s] been in other countries, performing mission for U.S. troops[.] P.O.W.s escaped by [his] hand[.]"  (Id. at18).

Plaintiff's claims not related to his foot claim are not shown to have existed at the time of the complaint's filing, or they are not presented with sufficient plausibility and concreteness to constitute a claim, or they do not concern matters to which a physical injury can be directly connected.  Therefore, the Court is not discussing these other allegations, namely, the inability to place a phone call (id. at 6, 16), the manner in which food is served (id. at 7), his prior civil lawsuit for excessive force (id. at 8), guards "extorting" prisoners to harm him (id. at 7, 9), lack of exercise (id. at 11), no postage  (id. at 14), lack of law library (id. at 18), inadequate, or lack of, materials needed to file a legal action (id. at 7), legal mail interference (id. at 16), and a continuing conspiracy from 1989 to murder him. (Id. at 16).

For relief, plaintiff requests "a temporary injunction for reasons of irreparable injury under rule 65, meaning possibly death, or loss of right leg due to inadequate medical treatment,

---

[2] In his motion to proceed without prepayment of fees, plaintiff states that in 1998, he was released from the Mt. Vernon [Searcy] Hospital.  (Doc. 2 at 10).  He further stated that he said that he "got out of the crazy house Mt Vernon 1998."  (Id. at 7).

swollen real big may have gain green [sic] right leg [and] murder attempts on 10-10-12, 11-15-2 whatever just and appropriate."  (Id. at 7).

After filing the complaint, plaintiff filed a motion to supplement and/or enjoin (Doc. 4), in which he seeks to add to his other allegations, complaints about governors, mayors, and judges not carrying out their duties, (id. at 4, 5), about an ongoing conspiracy to hurt him since 1989 (id. at 5), and the guards harassing him at night even though his light is covered.  (Id. at 8).

Despite plaintiff's jumbled complaint as supplemented and indications of mental health issues, the Court finds that his allegations advance a concrete claim for a swollen right foot that more than likely was present at the time of the complaint's filing.  (Id. at 7).  However, his allegations concerning this claim fall short of showing that he was imminent danger of serious physical injury at the time of filing.  His allegations show that the swollen condition of his right foot is a persistent one that has existed since his prior incarceration with ADOC in the 1990s. His allegations also show that he is receiving medical treatment for his foot at the jail and that he is receiving treatment at the jail for other medical and mental needs.  Based on his allegations, he appears to be disputing the medical treatment that he is receiving.  An inmate with such a claim generally is unable to show that there has been a deliberate indifference.  See  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law.") (citation and quotation marks omitted).  Moreover, no imminent danger is described in plaintiff's allegations.  And his allegations in regard to this claim appear very conclusory.

Because plaintiff cannot avail himself of § 1915(g)'s exception, and on account of his failure to pay the $350 filing fee at the time he filed this action, plaintiff's action is due to be

dismissed without prejudice. Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002) (holding that an action must be dismissed without prejudice when an inmate who is subject to § 1915(g) does not "pay the filing fee at the time he initiates the suit"); Vanderberg, 259 F.3d at 1324 (holding that the filing fee paid must be paid by an inmate subject to § 1915(g) at the time an action is commenced). Therefore, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

Furthermore, in analyzing plaintiff's allegations, the Court finds that they do not constitute an Eighth Amendment medical claim. The medical entities that are identified as medical providers are Correctional Medical Services, directors, and staff. (Id. at 7). Typically, in order to state an Eighth Amendment violation, a plaintiff must "allege acts or omissions sufficiently harmful to evidence a deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Thus, a plaintiff must establish through his allegations a serious medical need and a deliberate indifference to that need. Burnette v. Taylor, 533 F.3d 1325, 1330 (11th Cir. 2008).

In order to establish "deliberate indifference," a plaintiff must show that a defendant had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Id. (quotation marks and citation omitted). It is necessary to show that a defendant was "both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [ ] must also [have] draw[n] the inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)) (quotation marks omitted and brackets in original). It is not sufficient that the defendant should have perceived the risk but did not. Id. at 1331.

And in a § 1983 action, claims against a corporate medical care provider for inmates, like CMS, are governed by the law that is applied to municipalities.  <u>Fields v. Corizon Health, Inc.</u>, 2012 WL 3854592, at *7-*8 (11th Cir. Sept. 6, 2012) (unpublished);[3] <u>Buckner v Toro</u>, 116 F.3d 450, 452 (11th Cir.), <u>cert. denied</u>, 522 U.S. 1018 (1997).  This law requires that the medical care provider's custom or policy is the cause of a deprivation of a constitutional right in order for a § 1983 claim to be stated.  <u>Id.</u> at 453 ("finding that the <u>Monell</u> policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state, such as the provision of medical care to inmates").

In the present action, plaintiff did not identify a custom or policy of defendant CMS being involved in his claim, much less one that caused a constitutional deprivation.  Due to the absence of a custom or policy, plaintiff has not stated a § 1983 claim against defendant CMS.  Furthermore, plaintiff did not name specific individual defendants by name, only position.  <u>Cf. Dean v. Barber</u>, 951 F.2d 1210, 1215-1216 (11th Cir. 1992) (finding that John Doe should have been allowed as a defendant in light of the specific identifying information).  Nor did plaintiff attribute specific acts of deliberate indifference to an individual defendant, who could be served.  In light of the fact that plaintiff is receiving medical treatment for his condition, plaintiff's medical claim appears to be one for a dispute over his medical treatment.  Accordingly, plaintiff has not established the required element of deliberate indifference in order to state a § 1983 medical claim.  Thus, if plaintiff were able to proceed on his foot claim, he has not stated a medical claim under § 1983, and as such, his medical claim would be subject to dismissal under 28 U.S.C. § 1915(e)(2)(B).

---

[3]   "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11TH CIR. R. 36-2 (2005).

8

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 4th day of February, 2013.

/s/ Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.  **Objection**.  Any party who objects to this recommendation, or anything in it, must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982) (en banc).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[4] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  **Transcript (applicable Where Proceedings Tape Recorded)**.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" FED.R.CIV.P. 72(b)(2).